UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
ULANA ILLIANO

        Plaintiff,

v.

THE MINEOLA UNION FREE SCHOOL DISTRICT,
LORENZO LICOPOLI Individually and in his capacity
As Superintendent of THE MINEOLA UNION FREE
SCHOOL DISTRICT and MICHAEL NAGLER,
Individually and as Deputy Superintendent of THE
MINEOLA UNION FREE
SCHOOL DISTRICT

        Defendants.
--------------------------------------------------------------------x

★FILED★
2008 FEB -7  PM 4:33
CLERK
U.S. DISTRICT COURT
E.D.N.Y.

**COMPLAINT**

08 CV

CV-08 0529

SPATT, J.
ORENSTEIN, M.

Plaintiff, ULANA ILLIANO, complaining of defendants, alleges as follows:

## NATURE OF THE CASE

1. This is an action to redress unlawful employment discrimination in violation of the New York Executive Law, Article 15, the New York Human Rights Law, Section 290, et seq. ("NYHRL"), violation of the United States and New York State Constitution's protections against violations of free speech, freedom of association, due process and equal protection, 42 U.S.C. §1983, violations of New York's Civil Service Law §§75, 75-b, 200, et seq. (the Taylor Law), Labor Law §201-d, Civil Rights Law §40 and for defamation under New York common law.

## Jurisdiction And Venue

2. This action arises under New York Executive Law, Article 15, the New York Human Rights Law, Section 290, et seq. ("NYHRL"), violation of the United States and New York State Constitution's protections against violations of free speech, freedom

of association, due process and equal protection, 42 U.S.C. §1983, violations of New York's Civil Service Law §§75, 75-b, 200, et seq. (the Taylor Law), Labor Law §201-d, Civil Rights Law §40 and for defamation under New York common law. Consequently this court has jurisdiction over this action pursuant to 28 U.S.C. §1345; 42 U.S.C. §2000e-5(f)(3) and the principles of supplemental jurisdiction. Further, venue is proper because plaintiff ULANA ILLIANO ("plaintiff" or "Illiano") and defendants THE MINEOLA UNION FREE SCHOOL DISTRICT ("the District"), LORENZO LICOPOLI ("Licopoli") and MICHAEL NAGLER ("Nagler") are residents of and do business in Nassau County. In addition, the acts complained of herein occurred in Nassau County.

## BACKGROUND

3.     Plaintiff is a female who was employed by the District for a period of roughly eight (8) years from in or about September 1999 until her termination on or about June 30, 2007.

4.     Defendant the District is a public entity with offices and principal place of business located at 121 Jackson Avenue, Mineola, New York. The District manages, operates and administers public schools within the Mineola, New York, school district in Nassau County, New York. Defendant Licopoli is, and was during the acts complained of herein, the District Superintendent and was plaintiff's immediate supervisor, with the power to hire, fire and alter the terms and conditions of plaintiff's employment. Defendant Nagler, is, and was during the acts complained of herein, the Deputy District Superintendent and also had direct supervisory authority over plaintiff, with the power to hire, fire and alter the terms and conditions of plaintiff's employment.

5.      During the term of her employment, plaintiff was employed first as a Substitute Clerical and then as an Administrative Assistant to the District Superintendent, Lorenzo Licopoli. Her official Civil Service title at the time of her termination was Administrative Assistant II, a Competitive Civil Service title within the New York State Civil Service System.

6.      Plaintiff was employed at the District's offices located at 121 Jackson Avenue, Mineola, New York.

7.      Although she reported directly to Superintendent Licopoli, plaintiff also took direction from, was managed by and reported to Deputy Superintendent Michael Nagler, whose office was located on the same floor and adjacent to the Superintendent's office at 121 Jackson Avenue.

8.      At all times referred to herein, plaintiff performed her job in an exemplary manner.

9.      Beginning in or about 2005, plaintiff was the victim of a hostile work environment created by Deputy Superintendent Nagler, who on a number of occasions between 2005 and 2006 made sexually offensive, unwanted and unwelcome comments to plaintiff including, but not limited to, telling plaintiff that she could be "one of his girls" and that he "could have [her] anytime he wanted to". In addition, Nagler and Licopoli referred to a female former Assistant Superintendent as a "Jewish cunt" and sometimes simply "a cunt". Licopoli also consistently made comments about Jews and Jewish holidays that were offensive to plaintiff. These included, but were not limited to, telling plaintiff that a female Jewish employee of the District had a "fucking real Jew attitude" and, when he became upset at the fact that a Jewish holiday was about to take place,

3

stated to plaintiff "is that another one of them Jew holidays?" On one occasion Licopoli directed plaintiff to do online research regarding Jewish holidays to determine whether in fact he would consider such holidays "valid". Licopoli also made derogatory comments about a Jewish female who requested permission to take a day off in connection with her son's Bar-Mtizvah, telling plaintiff that he deemed it not worthy of granting a day off. On another occasion Licopoli told plaintiff that one Jewish employee was "OK" because she wasn't "a practicing Jew" but another Jewish employee was not "OK" because she "struts around here with her Jewish star". Licopoli also told plaintiff that he came from upstate New York and wasn't "used to all these Jew holidays" because there were no Jews where he came from. Plaintiff complained to Nagler and Licopoli about this behavior and demanded that it stop but they continued to treat plaintiff in a sexually offensive and derisive manner and to make derogatory comments about Jews. Although plaintiff is not Jewish, she has family members who are Jewish and repeatedly advised Licopoli and Nagler that she found these derogatory comments about Jews offensive and that they should stop.

    10.    When plaintiff complained to Superintendent Licopoli about these comments and Nagler's unwelcome and offensive behavior in an effort to get this behavior to cease, instead of addressing plaintiff's concerns and investigating the matter, Licopoli advised plaintiff that Nagler would one day be Superintendent and it would not be advisable for her to cross him. In addition, instead of investigating plaintiff's complaints, Licopoli told plaintiff that she should apologize to Nagler for making accusations about him so she could "solidify" her relationship with Nagler and remain on his "good side".

11. Subsequent to plaintiff's complaints to Licopoli, instead of investigating plaintiff's complaints as required by law and District policy, Licopoli actually investigated plaintiff by speaking with plantiff's co-workers about plaintiff's behavior in an effort to discover information detrimental to plaintiff's continued employment.

12. Licopoli, in fact, was brazen enough to tell plaintiff that he had "canvassed" plaintiff's co-workers and that she was "lucky" that no one had anything bad to say about her.

13. Plaintiff thereafter complained to a friend of hers, former District Assistant Superintendent Shari Camhi, concerning Nagler and Licopoli's offensive behavior and, via email, advised Camhi about this and other inappropriate conduct committed by Nagler, to wit, his giving preferential treatment to another female employee (his Administrative Assistant) on the basis of her physical appearance and engaging in sexually flirtatious conduct inappropriate to the workplace with that employee, the continual use of profane and inappropriate language in the workplace, including offensive sexual remarks and ethnic and religious slurs directed at Jewish employees and former employees of the District. Plaintiff also complained to Licopoli and Nagler that Nagler's Administrative Assistant did not have anything close to plaintiff's experience or skills yet was hired directly by Nagler and given the same salary as plaintiff. Nagler responded to plaintiff's complaints by giving her a raise of $50 per year.

14. Unbeknownst to plaintiff, Licopoli intercepted the email plaintiff had sent to her friend complaining about Licopoli and Nagler's offensive, unethical and illegal conduct.

5

15. Licopoli then advised plaintiff that she had breached her confidential status as an employee of the District, although she had not, and that he had received legal advice that he should speak to the District Board of Education about what action would be taken against plaintiff, although, on information he had received no such advice. Licopoli further advised plaintiff that she would most likely be fired and that he needed to "dispose" of her before a new Board of Education was installed.

16. In addition to the foregoing, plaintiff was the victim of retaliation for complaining to Licopoli about his tampering with and manipulating the Interview Committee Rankings that led to the installation of Nagler as Deputy Superintendent in 2005.

17. In or about 2005 there was a vacancy in the Deputy Superintendent position.

18. The process of searching for a suitable candidate to fill such vacancy required that an Interview Committee be convened and that the Committee interview candidates for the position.

19. Ultimately, there were two candidates under consideration for the vacant Deputy Superintendent position, Michael Nagler and Stephen Lando. Following interviews with each of the candidates, the Interview Committee was directed to fill out forms rating each of the candidates. When the forms were tabulated, Stephen Lando received more favorable ratings than Nagler.

20. This frustrated and infuriated Licopoli who preferred and intended to have Nagler installed in the Deputy Superintendent position, and plaintiff witnessed Licopoli tampering with and changing the ratings that had been placed on the forms by members

of the Interview Committee to fraudulently convey the impression that Nagler had actually received a more favorable rating than Lando.

21. Based upon these tampered with forms, and other inappropriate manipulation of the process by Licopoli, Nagler was selected to fill the vacancy.

22. Subsequent to the installation of Nagler, Licopoli perceived plaintiff as a threat to him (Licopoli) inasmuch as plaintiff was a witness to his having tampered with and forged public documents.

23. Licopoli's mistreatment and systematic harassment of plaintiff was also based on this perceived threat and was designed to force plaintiff to resign or to place herself in a position where he would have grounds to terminate her.

24. As a result of the foregoing, Licopoli, Nagler and the District, by its agents, employees, officers and representatives engaged in a campaign of acute harassment, discrimination and retaliation against plaintiff in violation of the law.

25. Such acts of harassment, discrimination and retaliation included, but are not limited to the following: the Superintendent threatened to fire plaintiff because she reported or threatened to report what she reasonably believed to be unlawful acts by the Deputy Superintendent and Superintendent, to wit, engaging in, aiding and abetting unlawful quid pro quo sexual harassment, creating an unlawful hostile work environment and making a gift of public monies based on preferential treatment of a District employee (Nagler's Administrative Assistant) with whom the Deputy Superintendent maintained an inappropriate relationship, and manipulating the results of the Interview Committee rankings that led to the installation of Nagler as Deputy Superintednent..

26. When Nagler referred to a female administrator as a "cunt" in front of other administrators Licopoli coerced everyone present at the meeting to promise that, in the event what Nagler said were ever disclosed, they would say that they "did not mind" his profane, derogatory and discriminatory utterance.

27. On another occasion the Superintendent threatened to summarily fire plaintiff although he knew that, as a Civil Service employee plaintiff had the right to due process, including a notice of hearing, right to an attorney, to present witnesses and to be furnished with written charges and specifications of misconduct or incompetence. Not only were the Licopoli's threats violations and misrepresentations of the law but they were clearly made to coerce plaintiff into not reporting conduct that she reasonably believed to be inappropriate and unlawful and to force plaintiff to resign rather than engage in the daily combat, harassment and hostility she was being made to endure.

28. On another occasion, when plaintiff advised Licopoli that she intended to go to the Board of Trustees of the District with her complaints Licopoli responded by telling plaintiff that, if she did that, she would not get a recommendation after she was forced to resign from her position or fired. On this occasion, Licopoli also told plaintiff she should go see a priest to "cleanse her soul". In addition, Licopoli and Nagler persistently reminded plaintiff that she had a daughter who was a student in the District and that persisting with her complaints would not be in the best interests of her daughter.

29. In or about June, 2007, Licopoli told plaintiff that she had three choices: apologize to Nagler, resign or be fired. When plaintiff refused to accept any of these choices and reiterated her belief that she was being treated unfairly in violation of the law, Licopoli hand wrote a letter of resignation purporting to be from plaintiff to the

District and ordered plaintiff to type it and sign it. Plaintiff was forced and coerced under duress into signing the letter at the physical direction of Licopoli and such signing was not done of her own free will but was coerced by Licopoli in retaliation for plaintiff's complaints about unlawful discrimination and the other unlawful and unethical conduct described above.

30. Thereafter, on various occasions, the Licopoli and Nagler advised plaintiff's former co-workers and superiors that plaintiff resigned "out of embarrassment" or was fired, both of which statements they knew to be false, untrue and defamatory.

31. In addition to being violations of the United States and New York State Constitutions, statutory and common law, the foregoing acts on the part of the District, Superintendent and Deputy Superintendent violated District and Board policies mandating that employees of the District shall be free from all forms of discrimination, including sexual harassment, religious discrimination and retaliation for complaining about same.

## AS AND FOR A FIRST CAUSE OF ACTION

32. The foregoing facts establish that defendants created, condoned, tolerated aided and abetted and failed to remedy a sexually and religiously hostile work environment. Such conduct amounts to unlawful gender and religion based discrimination. Furthermore, defendants intentionally, willfully and with malice and reckless disregard for the law discriminated against plaintiff on the basis of her sex and retaliated against her when she made complaints and/or threatened to make complaints about their conduct, all in violation of the New York State Human Rights Law, N.Y. Executive Law §290 et. seq., and are continuing to do so.

33. As a result, plaintiff is entitled to compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation, benefits and entitlements which plaintiff would have received from the date of her unlawful discharge to the date of judgment, together with such further relief as is just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION

34. Plaintiff repeats and realleges each of the allegations made in paragraphs 1 through 33 of this Complaint as if set forth more fully hereat.

35. At all times referred to herein, the individual defendants were acting under color of and New York State law. The foregoing facts establish that defendants' acts constitute violations of the Constitutions of the United States and New York State's protections against violations of free speech, freedom of association, due process and equal protection.

36. As a result, plaintiff is entitled to compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation, benefits and entitlements which plaintiff would have received from the date of her unlawful discharge to the date of judgment, together with such further relief as is just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION

37. Plaintiff repeats and realleges each of the allegations made in paragraphs 1 through 36 of this Complaint as if set forth more fully hereat.

38. The foregoing facts establish that defendants' acts constitute violations of New York's Civil Service Law §§75, 75-b, 200, et seq. (the Taylor Law) in that plaintiff

was deprived of the due process to which she is entitled under the law and was retaliated against in violation of the Whistleblower Protections afforded by the law.

39. As a result, plaintiff is entitled to compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation, benefits and entitlements which plaintiff would have received from the date of her unlawful discharge to the date of judgment, together with such further relief as is just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION

40. Plaintiff repeats and realleges each of the allegations made in paragraphs 1 through 41 of this Complaint as if set forth more fully hereat.

41. The foregoing facts establish that defendants' acts violated New York Labor Law §201-d in that plaintiff's communications and complaints were intended to inure to the benefit of other employees whose terms and conditions of employment were affected by defendants' actions and, as such, they constitute concerted protected activity under the law.

42. As a result, plaintiff is entitled to compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation, benefits and entitlements which plaintiff would have received from the date of her unlawful discharge to the date of judgment, together with such further relief as is just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION

43. Plaintiff repeats and realleges each of the allegations made in paragraphs 1 through 42 of this Complaint as if set forth more fully hereat.

44. The foregoing facts establish that defendants' acts violated New York Civil Rights Law §40 in that plaintiff was deprived of her right to equal protection of the laws of New York and was discriminated against and harassed on the basis of her sex.

45. As a result, plaintiff is entitled to compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation, benefits and entitlements which plaintiff would have received from the date of her unlawful discharge to the date of judgment, together with such further relief as is just and proper.

## AS AND FOR A SIXTH CAUSE OF ACTION

46. Plaintiff repeats and realleges each of the allegations made in paragraphs 1 through 45 of this Complaint as if set forth more fully hereat.

47. That the aforesaid actions of defendants Licopoli and Nagler, in knowingly publishing and disseminating to those with no need to know, false information concerning plaintiff, to wit, that she resigned from her position to avoid embarrassment or was fired, constitute defamation per se in that they tended to hold plaintiff up to public contempt and ridicule, disgrace and prejudice in the community and to cause damage to plaintiff's professional reputation within the community in which she lives and was employed; and therefore caused plaintiff to suffer great mental pain and anguish and injure her good name, business reputation, and social standing, and caused plaintiff to lose esteem and respect of friends acquaintances, business associates, and of the public generally.

48. As a result, plaintiff is entitled to damages in an amount to be determined at trial but believed to be in excess of $1,000,000.

## AS AND FOR A SEVENTH CAUSE OF ACTION

49. Plaintiff repeats and realleges each of the allegations made in paragraphs 1 through 48 of this Complaint as if set forth more fully hereat.

50. As a result of the foregoing, defendant's deprived plaintiff of her rights guaranteed her by reason of 42 U.S.C. §1983.

51. As a result, plaintiff is entitled to compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation, benefits and entitlements which plaintiff would have received from the date of her unlawful discharge to the date of judgment, together with such further relief as is just and proper.

**WHEREFORE**, plaintiff demands judgment as follows:

1. On the First Cause of Action, against all defendants jointly and severally, awarding plaintiff compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation and benefits which plaintiff would have received from the date of her unlawful discharge to the date of judgment, and such other damages are permitted by statute, including the costs of bringing this action, including reasonable attorney's fees, together with such further relief as is just and proper.

2. On the Second Cause of Action, against all defendants jointly and severally, awarding plaintiff compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost

wages, bonuses, salary increases and such other compensation and benefits which plaintiff would have received from the date of her unlawful discharge to the date of judgment, and such other damages are permitted by statute, including the costs of bringing this action, including reasonable attorney's fees, together with such further relief as is just and proper.

        3. On the Third Cause of Action, against all defendants jointly and severally, awarding plaintiff compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation and benefits which plaintiff would have received from the date of her unlawful discharge to the date of judgment, and such other damages are permitted by statute, including the costs of bringing this action, including reasonable attorney's fees, together with such further relief as is just and proper.

        4. On the Fourth Cause of Action, against all defendants jointly and severally, awarding plaintiff compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation and benefits which plaintiff would have received from the date of her unlawful discharge to the date of judgment, and such other damages are permitted by statute, including the costs of bringing this action, including reasonable attorney's fees, together with such further relief as is just and proper.

        5. On the Fifth Cause of Action, against all defendants jointly and severally, awarding plaintiff compensatory damages in an amount to be determined at

trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation and benefits which plaintiff would have received from the date of her unlawful discharge to the date of judgment, and such other damages are permitted by statute, including the costs of bringing this action, including reasonable attorney's fees, together with such further relief as is just and proper.

      6.      On the Sixth Cause of Action, against all defendants jointly and severally, awarding plaintiff damages in an amount to be determined at trial but believed to be in excess of $1,000,000 and such other damages are permitted by statute, including the costs of bringing this action, including reasonable attorney's fees, together with such further relief as is just and proper.

      7.      On the Seventh Cause of Action, against both defendants jointly and severally, awarding plaintiff compensatory damages in an amount to be determined at trial but believed to be in excess of $1,000,000; back pay and front pay including lost wages, bonuses, salary increases and such other compensation and benefits which plaintiff would have received from the date of her unlawful discharge to the date of judgment, and such other damages are permitted by statute, including the costs of bringing this action, including reasonable attorney's fees, together with such further relief as is just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues, which may be so tried.

Dated: New York, New York
       February 7, 2008

                                                LAW OFFICES OF HARRY WEINBERG

By: _____
      HARRY WEINBERG, ESQ. (HW 0574)
      Attorney for Plaintiff
      11 Beach Street – 8th Floor
      New York, N.Y. 10013
      (212) 989-2908

TO:   MINEOLA UNION FREE
       SCHOOL DISTRICT
       121 Jackson Avenue
       Mineola, N.Y. 11501

       LORENZO LICOPOLI
       121 Jackson Avenue
       Mineola, N.Y. 11501

       MICHAEL NAGLER
       121 Jackson Avenue
       Mineola, N.Y. 11501